UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUANITA HONOR,

    Plaintiff,

v.                                                        Case No. 8:18-cv-677-T-CPT

USA TRUCK, INC.,

    Defendant.
_____/

**O R D E R**

Before the Court is a series of motions filed by the parties pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)—four by Defendant USA Truck, Inc. (Docs. 52, 84, 85, 86) and two by Plaintiff Juanita Honor (Docs. 99, 100). Also before the Court are the parties' respective memoranda in opposition to these motions. (Docs. 65, 87, 88, 89, 103, 104). A status conference on the matter was held on January 8, 2020. For the reasons discussed below, USA Truck's motions are granted in part and denied in part, and Honor's motions are taken under advisement pending an evidentiary hearing.

I.

*Background*

This action stems from an October 2016 motor vehicle accident involving Honor and a then-employee of USA Truck, James Poynter. (Doc. 1). In her

complaint filed in March 2018, Honor alleges that Poynter negligently caused the accident and that she is entitled to past and future medical expenses from USA Truck for the harm she suffered as a result. *Id.* at 2-3. According to Honor, that harm includes permanent bodily injuries as well as the aggravation of a pre-existing disease or physical defect. *Id*. at 3. While USA Truck accepts vicarious liability for Poynter's actions, it denies he was negligent. (Doc. 8).

In May 2018, the Court entered a Case Management and Scheduling Order, which required Honor and USA Truck to provide their expert disclosures by certain deadlines. (Doc. 15 at 1). Pursuant to this schedule, USA Truck thereafter tendered to Honor two preliminary expert reports, one from Donald J. Fournier, P.E., a mechanical engineer and accident reconstructionist, and the other from Ying Lu, Ph.D., a biomedical engineer. (Docs. 99-1, 100-1). Fournier opines in his report that, based upon his review of certain materials and photographs relating to the accident, the estimated speed of Honor and Poynter's vehicles at the time of impact was "no more than 5 mph." (Doc. 99-1 at 3). Relying upon Fournier's conclusion about the vehicles' speed as well as her own assessment of other materials, Lu opines, among other things, that the forces to Honor's head and neck were "comparable to or less than the forces that she would have experienced in some daily activities." (Doc. 100-1 at 5).

After being served with Fournier and Lu's reports, Honor provided USA Truck with her own expert disclosures. USA Truck subsequently moved to strike those disclosures on the grounds that they were untimely and failed to comply with the

2

requirements of either Federal Rule of Civil Procedure 26(a)(2)(B) (applicable to "retained or specifically employed" experts) or 26(a)(2)(C) (applicable to "non-retained" experts). (Doc. 18). Following a hearing on the matter, the Court denied USA Truck's motion, granted Honor an opportunity to amend her expert reports to comply with Rule 26(a)(2)(C), and extended the time for USA Truck to conduct expert discovery as to Honor's identified witnesses. (Doc. 31).

Upon receipt of Honor's amended disclosures, USA Truck again moved to foreclose any trial testimony from her proposed experts, particularly from her treating doctors. (Doc. 44). In part because Honor was then proceeding *pro se* and to afford USA Truck additional time to conduct depositions, the Court denied that motion without prejudice and further extended the deadline for USA Truck to obtain discovery relative to Honor's expert witnesses. (Doc. 69).

Between June and September 2019, USA Truck deposed several of Honor's treating doctors, including Susanti K. Chowdhury, M.D.; Frank Bono, D.O.; Robert Indelicato, D.C.; and Samuel A. Joseph, M.D. (Docs. 52, 84, 85, 86).

With the benefit of this discovery, the parties filed the instant motions in anticipation of the trial in this matter, which is now scheduled for April 2020. By way of its motions, USA Truck seeks to exclude evidence from Honor's four treating doctors and references the deposition transcripts of these medical providers in support its request. *Id.*

For her part, Honor asks the Court to preclude the testimony of both of USA Truck's engineers, Fournier and Lu. (Docs. 99, 100). To buttress this request, she

3

submits the experts' preliminary reports, which include their resumes as well as a list of cases in which they have previously testified. (Docs. 99-1, 100-1).

II.

*Daubert Standard*

Rule 702, as informed by *Daubert* and its progeny, governs the admissibility of expert testimony. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005); *United States v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004). Under Rule 702, where "scientific, technical, or other specialized knowledge will assist a trier of fact in understanding the evidence or determining a fact in issue," a witness "qualified by knowledge, skill, experience, training or education, may testify in the form of opinion" if (1) "the testimony is based upon sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) the witness "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The party offering expert testimony must establish by a preponderance of the evidence that each of these requirements has been met. *Frazier,* 387 F.3d at 1260; *Rink,* 400 F.3d at 1292.

By its terms, Rule 702 compels trial courts to "act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Daubert*, 509 U.S. at 597 n.13). To carry out this function, courts must engage in a three-step analysis:

> First, the expert must be qualified to testify competently regarding the matter he or she intends to address. Second, the methodology used must be reliable as determined by the *Daubert* inquiry. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue.

*Id.* (citing *Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)); *see also United States v. Jayyousi,* 657 F.3d 1085, 1106 (11th Cir. 2011); *Rink*, 400 F.3d at 1291-92; *Frazier*, 387 F.3d at 1260. While these steps admit some overlap, each involves "distinct concepts that courts and litigants must take care not to conflate." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

To meet the first requirement regarding the expert's qualifications, a party must show that its expert has sufficient "knowledge, skill, experience, training, or education" to form a reliable opinion about an issue before the court. *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (quoting Fed. R. Evid. 702) (*Hendrix II*). This standard is "not [a] stringent" one and is satisfied "so long as the witness is at least minimally qualified." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D. Fla. Jan. 28, 2009) (*Hendrix I*) (citations omitted). Once this threshold is met, any objections to the expert's qualifications will be deemed to go to the credibility and weight of the expert's testimony, not its admissibility. *Id*. (citation omitted).

With respect to the second requirement relating to the reliability of the expert's opinion, the Supreme Court in *Daubert* identified "four nonexclusive factors" for trial courts to employ in considering this issue: "(1) whether the theory can and has been tested; (2) whether it has been subjected to peer review; (3) the known or expected rate of error; and (4) whether the theory and methodology employed is generally accepted in the relevant scientific community." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233,

1251 (11th Cir. 2005) (citing *Daubert,* 509 U.S. at 593-94). As *Daubert* and its progeny make clear, however, these factors are general guidelines, and the trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *United States v. Kyler*, 429 F. App'x 828, 830 (11th Cir. 2011) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

The third requirement, helpfulness, "goes primarily to [the issue of] relevance." *Quiet Tech.*, 326 F.2d at 1347 (quoting *Daubert*, 509 U.S. at 591). To satisfy this requirement, expert testimony must be probative of an issue in the case and offer insights "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (citations omitted). "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.

In the end, while "rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology," *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002) (internal quotation marks and citations omitted), "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341. Indeed, the Eleventh Circuit has cautioned that the *Daubert* inquiry is not intended to "supplant the adversary system." *Id.* (quotation omitted). Instead, as the Court has noted, "[v]igorous cross-examination, presentation of contrary

6

evidence, and careful instruction on the burden of proof [remain] the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596.

III.

A.

*Honor's Treating Doctors*

With the above standards in mind, the Court turns to the admissibility of the challenged expert testimony, beginning with Honor's treating doctors, Chowdhury, Bono, Indelicato, and Joseph. (Docs. 52, 84, 85, 86). The crux of USA Truck's opposition to this evidence is that it is based solely on Honor's self-reports that she was injured in the October 2016 motor vehicle accident. *Id.* As a result, USA Truck asserts that these healthcare professionals are without a credible and scientific basis upon which to predicate their causation opinions. *Id.*

The Court notes as an initial matter that, although USA Truck argued in its motion that it sought to prevent Honor's experts from testifying entirely (Doc. 52 at 19; Doc. 84 at 18; Doc. 85 at 18; Doc. 86 at 18), it clarified at the January 8 status conference that it now only requests that their testimony on the issue of causation be excluded.[1] The Court finds exclusion of any and all causation testimony from Honor's treating doctors unwarranted at this juncture but agrees that such testimony should be circumscribed.

---

[1] To the extent USA Truck maintains its request to preclude Honor's treating doctors from testifying altogether, that request is denied.

Treating doctors are often referred to as "hybrid" witnesses, "who provide both fact testimony and opinion testimony based on their scientific, technical or other specialized knowledge." *Poltorak v. Ferrell*, 2018 WL 1718688, at *5 (S.D. Fla. Jan. 4, 2018) (quotation and citation omitted); *see also* William P. Lynch, *Doctoring the Testimony: Treating Physicians, Rule 26, and the Challenges of Causation Testimony*, 33 Rev. Litig. 249 (2014). Because of the nature of the care they render to their patients, treating physicians frequently testify regarding factual and other matters that both reflect their medical expertise and are outside the knowledge of a typical layman. Treating physicians are therefore typically not mandated to provide formal written expert reports in accordance with Rule 26(a)(2)(B), but instead are only required to tender more limited disclosures as non-retained experts under Rule 26(a)(2)(C). *Bostick v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 2869967, at *1-2 (M.D. Fla. July 5, 2017) (quoting Fed. R. Civ. P. 26(a)(2)(C), advisory committee's note to the 2010 amendment) ("A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or health care professionals and employees of a party who do not regularly provide expert testimony.")

Irrespective of their written disclosure requirements, treating doctors offering expert *opinion* testimony nonetheless must pass muster under Rule 702 and *Daubert*. *See Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1317 (11th Cir. 2011)

(discussing the "special evidentiary problems" presented by the testimony of treating physicians under prior version of Fed. R. Civ. P. 26(a)(2)). In this District (and elsewhere), it is generally accepted that such medical providers may offer causation testimony as long as their opinions are "sufficiently related to the information disclosed during the course of plaintiff's treatment." *Rementer v. United States*, 2015 WL 5934522, at *6 (M.D. Fla. Oct. 9, 2015); *see also Brown v. NCL (Bahamas) Ltd.*, 2016 WL 8730145, at *5 (S.D. Fla. Oct. 13, 2016) ("[A] treating physician may not offer testimony regarding causation *unless* the determination of causation was necessary for treatment and their opinions are helpful to a clear understanding of the witnesses' testimony."); *Levine v. Wyeth Inc.,* 2010 WL 2612579, at *2 (M.D. Fla. June 25, 2010) (same) (citations omitted); *Torres v. First Transit, Inc.*, 2018 WL 3729553, at *3 (S.D. Fla. Aug. 6, 2018) ("[T]reating physicians who cannot be deemed an expert witness and can only be deemed a fact witness must be precluded from testifying regarding causation issues if that testimony is not sufficiently related to the information disclosed during the course of Plaintiff's treatment or at his deposition.") (quoting *Levine*, 2010 WL 2612579, at *1) (internal quotations marks omitted).

In light of this authority, the Court grants USA Truck's motion in part. Honor's treating doctors will not be allowed to offer any expert testimony that is not sufficiently related to the information disclosed during the course of their treatment of Honor. Where the exact boundaries lie in this regard will have to be addressed at trial by way of specific objections to specific testimony. *Torres*, 2018 WL 3729553, at *3 (noting that "[t]he exact boundaries of [a] treating physician's testimony may need to

be addressed with specific objections to specific testimony in the context of trial") (quoting *Levine*, 2010 WL 2612579, at *1).

## B.
### *USA Truck's Engineers*

Turning to Honor's two *Daubert* motions (Docs. 99, 100), the Court finds these submissions—which Honor filed when she was proceeding *pro se*—wanting. Both filings consist almost entirely of recitations of general legal principals and case citations, contain scant argument regarding the facts applicable to this case, and instead rely principally on conclusory assertions that the testimony of Fournier and Lu is unreliable and will not assist the trier of fact.[2] While Honor attaches copies of these experts' preliminary reports (Docs. 99-1, 100-1), she does not explain how their methodologies are flawed or why their testimony is not relevant to this case. In addition, it is unclear whether Honor challenges all of Fournier and Lu's opinions or just portions of them. Further, it does not appear that Honor has made any effort to probe the basis for these experts' opinions (i.e., by taking their depositions or conducting other expert discovery). As a result, the Court is unable to determine what, if any, merit there may be to Honor's positions.

That being said, the Court recognizes its gatekeeping function regarding expert testimony in general. While it should not be put in a position to opine as to why Honor believes Fournier and Lu's testimony does not satisfy *Daubert*'s strictures, the

---

[2] It does not appear from her motions that Honor challenges Fournier or Lu's qualifications.

10

Court has reviewed Fournier and Lu's reports and finds them lacking in sufficient detail for the Court to determine the nature and reliability of the methodologies they employed. Given that it is the proponent's burden to satisfy the *Daubert* factors, the Court finds that an evidentiary hearing on the admissibility of these two experts' opinions is warranted.[3]

IV.

*Conclusion*

Accordingly, the Court ORDERS as follows:

1. USA Truck's motions (Docs. 52, 84, 85, 86) are granted in part and denied in part as set forth above.

2. Honor's motions (Docs. 99, 100) are taken under advisement.

3. The Court will schedule an evidentiary hearing on Honor's motions (Docs. 99, 100) by separate notice. At least five (5) days prior to the date of the hearing, counsel for the parties shall confer regarding (a) any exhibits they will seek to offer at the hearing; (b) any stipulations they might agree to regarding the admissibility

---

[3] The Court notes only at this stage that motion practice regarding the reliability of accident reconstructionists, as well as biomechanical and biomedical engineers, is relatively common, and the outcome of such litigation is highly fact dependent. These types of experts have been permitted to testify in whole or in part in some cases, while they have been excluded from testifying altogether in others. *See, e.g., Hughes v. GEICO Gen. Ins. Co.*, 2017 WL 7000273, at *4 (M.D. Fla. Aug. 31, 2017) (granting motion to exclude testimony of accident reconstructionist), *decision clarified on reconsideration*, 2018 WL 490506 (M.D. Fla. Jan. 19, 2018); *Fox v. Gen. Motors LLC*, 2019 WL 3483171, at *5 (N.D. Ga. Feb. 4, 2019) (denying motion to exclude testimony of accident reconstructionist); *Dewit v. UPS Ground Freight, Inc.*, 2017 WL 3597515, at *3 (N.D. Fla. July 21, 2017) (granting in part and denying in part motion to exclude accident reconstructionist and biomechanical engineer's opinions).

of the proposed testimony; and (c) the scope of any objections they may have to such testimony.

DONE and ORDERED in Tampa, Florida, this 30th day of January 2020.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record